IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

DIANE HANLEY,                    )
    Plaintiff,                   )
                          )
        v.                          )        Case No. 1:11-cv-270
                          )
IAN RUMMER                       )
    Defendant.                   )

## ORDER

This matter came before the Court on the motion for summary judgment of plaintiff Diane Hanley ("Hanley"). This matter was fully brief and argued, following which a bench ruling issued. This Order memorializes the bench ruling.

### I.

The material facts in this matter are undisputed. On May 26, 2004, Diane Hanley and her now-deceased husband James Hanley gave their daughter Dusty Rummer and their son-in-law defendant Ian Rummer ("Rummer") money to purchase a house located at 3137 20th Street North, Arlington, Virginia (the "Arlington house"). On the same day, the Rummers executed a note promising to repay Hanley and her now-deceased husband James Hanley $1,000,000 over monthly installments ("Note"). In exchange for signing this Note, which was secured by a contemporaneously executed Deed of Trust, the Rummers acquired title to the Arlington house. The Hanleys paid the full purchase price of $1,129,000, which ostensibly made the difference between this price and the Note principal a gift of $129,000 to the Rummers. The Hanleys told their daughter Dusty Rummer that "the money to purchase [the Arlington home] was family money and would have to be repaid if and when the [house] was ever sold." Def.'s Answers to Pl.'s First Interrogs. 6 (Doc. 34, Ex. 12).

The plain terms of the Note require the Rummers to pay the Hanleys $5,995.50 on the first of every month. The Note further specifies that interest on the unpaid principal accrues at an annual interest rate of 6% until the principal has been paid in full. Finally, the Note requires payment of any outstanding balance in full on June 1, 2034. For nearly six years, however, Rummer paid far less than the required $5,995.50 per month. Between December 2004 and June 2010, Rummer made bi-weekly payments of $350, totaling on average $758 per month. He then increased these bi-weekly payments to $417, which resulted in his paying approximately $903 per month between July and December 2010. The Hanleys (and then just Diane Hanley following her husband's death) accepted these payments for over six years. Hanley admits telling Rummer before the Note was executed that "the Rummers could begin the payments of the Note by paying the taxes due on the property and $700 per month until James Hanley and I believed the Rummers were able to increase such payments." Pl.'s Objections & Responses to Def.'s Second Discovery 4 (Doc. 34, Ex. 11). Rummer asserts that after the Note was executed, Mr. Hanley told the Rummers—in Diane Hanley's presence—that the Rummers "need only pay what an amount which was less than the rent which they paid on the Georgetown House," which was $950 per month. Def.'s Answers to Pl.'s First Interrogs. 5 (Doc. 34, Ex. 12). Mr. Hanley also said in Ms. Hanley's presence that Rummer "did not have to worry because it was a note which 'would never have to be paid.'" *Id.*

In May 2010, Ian and Dusty Rummer separated and began divorce proceedings. Rummer tendered a payment on the Note to Hanley on December 20, 2010 but did not make a payment on January 2, 2011, as the terms of the Note required. On February 14, 2011, counsel for Hanley sent Rummer a written notice that unless Rummer paid the past-due amount by February 24, Rummer would be in default and all amounts owing under the Note would become due

immediately. Rummer again made no payment. To date, Rummer has paid only $58,122 toward the million-dollar note, and he has not tendered any payments since December 2010.

Hanley brought suit seeking enforcement of the Note in light of Rummer's default. Rummer moved to dismiss the action for failure to state a claim on the ground that the complaint failed to allege that Hanley is a holder entitled to enforce the Note. That motion was denied by Order dated May 13, 2011. Order, *Hanley v. Rummer*, No. 1:11cv270 (E.D. Va. May 13, 2011) (Doc. 15). Rummer filed an answer and counterclaimed for reformation of the Note. After the close of discovery, Hanley moved for summary judgment.

## II.

Summary judgment is appropriate under Rule 56, Fed. R. Civ. P., only where, on the basis of undisputed material facts, the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The question on summary judgment is "whether a reasonable jury could find in favor of the non-moving party, taking all inferences to be drawn from the underlying facts in the light most favorable to the non-movant[.]" *In re Apex Express*, 190 F.3d 624, 633 (4th Cir. 1999). Importantly, to defeat summary judgment the non-moving party may not rest upon a "mere scintilla" of evidence, but must set forth specific facts showing a genuine issue for trial. *Id.* at 324; *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Thus, the party with the burden of proof on an issue cannot prevail at summary judgment on that issue unless that party adduces evidence that would be sufficient, if believed, to carry the burden of proof on that issue at trial. *See Celotex*, 477 U.S. at 322.

## III.

Under Virginia law,[1] it is well-settled that a plaintiff alleging a breach of contract must prove that (1) the defendant has a legally enforceable obligation to the plaintiff; (2) the defendant breached the obligation; and (3) this breach injured or caused damage to the plaintiff. *Filak v. George*, 267 Va. 612, 619, 594 S.E.2d 610 (2004). The legally enforceable obligation here is the Note that Rummer admits he executed on May 26, 2004. Rummer thereby incurred an obligation to pay Hanley $1,000,000 plus interest over monthly installments, and in the event of late payment or default, late fees and possibly attorney's fees.[2] Raising no defenses to formation such as duress or undue influence, Rummer does not dispute the Note's validity. Instead, he argues that it does not contain the parties' full agreement. In this respect, Rummer argues that certain oral statements that the Hanleys made before and after its execution are enforceable even to the extent that those promises differ from or vary the Note's terms. He also argues that promissory estoppel bars enforcement of the Note and that no default has occurred because the notice of default did not accurately state the overdue amount and thus did not allow Rummer the opportunity to cure the default. These arguments are separately addressed.

An oral promise made prior to the Note's execution and alleged to be part of the same agreement is not enforceable if it varies or contradicts one of the Note's terms. Rummer contends that prior to and contemporaneous with the Note's execution, the Hanleys promised to apply the proceeds from selling a house in Georgetown in which the Rummers had lived between

---

[1] Since the Note was executed and delivered in Virginia, Virginia law governs the rights and duties of the parties under the Note in this diversity action. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938); *Buchanan v. Doe*, 246 Va. 67, 70–71, 431 S.E.2d 289 (1993).

[2] Although the Note lists both James and Diane Hanley as holders, Diane Hanley is entitled to enforce the Note as both holders agreed to transfer the Note exclusively to her, and she took possession of the Note thereafter. *See* Va. Code § 8.3A-203(b). After Mr. Hanley's death in November 2005, Rummer deposited payments on a bi-weekly basis into Ms. Hanley's bank account until December 2010.

2000 and 2004 toward the purchase of the Arlington home.[3]   This promise, Rummer asserts, was part of the house-purchase bargain that also included the Note.   The parol evidence rule, well-settled and "strictly adhered to . . . in Virginia," bars admission of parol evidence to "vary the terms and conditions of an integrated written contract."   *Jim Carpenter Co. v. Potts*, 255 Va. 147, 155, 495 S.E.2d 828 (1998) (citation omitted).   The absence of an integration clause in the Note might allow admission of parol evidence under either (1) the partial integration doctrine, under which such evidence may be admitted "not to contradict or vary [a written agreement's] terms but to show independent facts contemporaneously agreed upon," or (2) the collateral agreement doctrine, which allows "proof of a prior or contemporaneous oral agreement that is independent of, collateral to and not inconsistent with the written contract, and which would not ordinarily be expected to be embodied in the writing."   *High Knob, Inc. v. Allen,* 205 Va. 503, 506–07, 138 S.E.2d 49 (1964).

Neither of these doctrines justifies allowing the promise to apply to the Note the proceeds from the sale of the Georgetown home to modify the Note.   First, nothing in the record indicates that this promise was made "contemporaneously" with the signing of the Note, rather than months or even years before.   *See Swengler v. ITT Corp. Electro-Optical Prods. Div.*, 993 F.2d 1063, 1069–70 (4th Cir. 1993).   Moreover, importing that promise into the Note would contradict the written term that stated the amount of principal due.   The Note obligates Rummer to pay Hanley the principal amount of $1,000,000, not the amount of $1,000,000 minus proceeds from another real estate sale.   Thus, adding this promise to the Note would contradict the $1,000,000 principal term, as Rummer would then owe substantially less in principal than the amount specified in the Note.   The promise to apply the proceeds from the sale of the

---

[3] Although Ian and Dusty Rummer were the titled owners of the Georgetown house, the Hanleys had paid the house's full purchase price in cash.

Georgetown home as a credit under the Note is therefore unenforceable because, unless bargained-for, the promise is nothing more than a promise to make a future *inter vivos* gift that was never delivered. *See Rust v. Phillips*, 208 Va. 573, 578, 159 S.E.2d 628 (1968).

Two other promises that the Hanleys made *after* the Note's execution, however, must be analyzed under the doctrine of equitable estoppel. Rummer contends that after the Note's execution, Mr. Hanley promised (in the plaintiff's presence) that (1) Rummer need only make monthly payments of a lesser amount than the Note specified; and (2) that the Note would not ever come due. In Virginia, the Statute of Frauds requires that any subsequent modification to an agreement to extend credit for at least $25,000 must be in writing and signed by the party against whom enforcement is sought. *See* Va. Code. § 11-2(9); *Lindsay v. McEnearny Assocs.*, 260 Va. 48, 53, 531 S.E.2d 573 (2000). Thus, these promises would be barred by the Statute of Frauds unless Hanley is estopped from asserting this defense. Although the doctrine of promissory estoppel has no purchase here,[4] a party may be estopped from asserting the Statute of Frauds defense under the doctrine of equitable estoppel. This doctrine allows a court to "avoid the statute and enforce an oral agreement" in the following circumstance:

> [T]he parole agreement must be certain and definite, the acts proved in part performance must refer to, result from, or be made pursuant to the agreement, and the agreement must have been so far executed that a refusal of full execution would operate as a fraud upon the party, and place him in a situation which does not lie in compensation. Moreover, the act or acts of part performance must be of such unequivocal nature as to be evidence of the existence of an agreement. Indeed, the part performance must be consistent with no theory other than the existence of the alleged oral contract.

---

[4] *See W.J. Shafer Assocs. v. Cordant, Inc.*, 254 Va. 514, 520–21, 493 S.E.2d 512 (1997) (recognizing that in Virginia promissory estoppel applies only when a promisor has challenged that an agreement for which the promisee seeks performance lacked consideration). Hanley argues that these promises are unenforceable not because consideration was wanting, but rather because the promises do not satisfy the Statute of Frauds.

*T . . . v. T . . .*, 216 Va. 867, 872, 224, S.E.2d 148 (1976) (internal citation omitted).  In other words, the party seeking enforcement of a subsequent oral modification to a written agreement must show "a representation, reliance, a change of position, and detriment." *Id.* at 873.  The enforceability of Mr. Hanley's promises must be determined with respect to each of Rummer's primary obligations under the Note; that is, as concerns a particular obligation (*e.g.* duty to pay principal), Mr. Hanley's promises are enforceable only to the extent that Rummer can show reliance, change of position, and detriment on account of Mr. Hanley's promises.

The doctrine of equitable estoppel, applied here, leads to the conclusion that Mr. Hanley's subsequent promises modified some of Rummer's obligations under the Note, but not others.  To begin, these promises did not alter Rummer's obligation to pay the principal because Rummer neither relied nor suffered a detriment with respect to this obligation.  His default and the accelerated basis on which the debt became due are not detriments because they are consequences that are consistent with the parties' expectations.  In exchange for obligating himself to pay the Hanleys $1,000,000, Rummer acquired title to a home valued at closing at $1,290,000 and lived there for about six years while paying less than $1,000 per month for him and his family to do so.  Particularly in light of the Hanleys' statement to their daughter that the money used to purchase the home was "family money" and would have to be repaid if the house sold, the parties' course of dealing makes clear that the subsequent promise that the Note would never come due did not relieve Rummer from his obligation to pay the principal.[5]  Instead, the Note ensured that either the Arlington house itself or the money used to pay for it would remain

---

[5] *See Stanley's Cafeteria v. Abramson*, 226 Va. 68, 73, 306 S.E.2d 870 (1983) (stating that under Virginia law "a course of dealing by contracting parties, considered in light of all the circumstances, may evince mutual intent to modify the terms of their contract" if the evidence was "clear, unequivocal and convincing").  These subsequent promises also accord with Ms. Hanley's promise made prior to the Note's execution that only $700 per month would be due until the Rummers could afford to make higher payments.

in the Hanley family.  On Rummer's default, Hanley could demand immediate payment of the principal amount that Rummer still owed or, if he failed to make this payment, foreclose on the pursuant to the Deed of Trust.  If having to pay the principal upon default constitutes a detriment, then the house itself would be a gift to Rummer—a result that the parties clearly did not intend. Because Rummer suffered no detriment with respect to his obligation to pay the principal, equitable estoppel does not impede Hanley's enforcement of this obligation against Rummer.

Rummer's obligations to pay interest and late fees are of a different stripe than his obligation to pay the principal.  In reliance on Mr. Hanley's promises, each of Rummer's regular monthly payments under the Note fell well short of the amount that the Note's written terms required.  With respect to late fees, the promise that Rummer need pay a lesser amount per month necessarily implies a promise that no payment of that lesser amount would be considered late.  Mr. Hanley's promises similarly modified Rummer's obligation to pay interest. It is true that absent the promise that the Note would never become due, the promise that Rummer need make monthly payments of a lesser amount might have simply given Rummer a choice between making lower payments that result in owing more interest later and making higher payments that result in less interest owed later.  But taken with Mr. Hanley's other promise that the Note would never become due, the promise of paying less in monthly payments gave Rummer no reason to pay more than what Mr. Hanley said Rummer should pay.  The Note never becoming due would mean that, absent default, the interest owing would never become due.

Mr. Hanley's promises therefore modified the Note such that Rummer would not owe the principal or other fees unless and until he defaulted by ceasing, as he did, to make the monthly payments of the amount that the Hanleys stated.  In context, these promises are sufficiently definite and ascertainable to have effected enforceable modifications of the Note, as

- 8 -

unequivocally evidenced by Ms. Hanley's acceptance over six and a half years of bi-monthly payments for an amount consistent with Mr. Hanley's promise and her understanding of the "honor system." Thus, having never paid more than $1,000 per month on a $1,000,000 note, Rummer would suffer large accumulated interest and late fee obligations unless Mr. Hanley's promises were enforced as to these obligations. Rummer is therefore obligated to pay the principal on the Note but not late fees or interest that would otherwise have accrued absent the modification occasioned by the generous agreement to allow the periodic Note payments in amounts less than required by the Note's terms.

Thus, under the terms of the modified note, Rummer's default requires that he pay the full amount of the principal, interest and late fees accruing since default, as well as attorney's fees.[6] Rummer argues that because the February 2011 notice misstated the overdue amount, the notice was defective and did not trigger the beginning of the notice-and-cure period. There is no dispute that Rummer's last payment on the Note was in December 2010, and that a payment, due on January 1, 2011, was not made. And significantly, the Note itself does not expressly require that a notice of overdue payment reflect an accurate amount, nor has Rummer cited any authority holding that a notice of default that is correct as to payment being overdue but incorrect as to the amount overdue is ineffective. The Note instead provides that if Rummer does "not pay the full amount of each monthly payment on time, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date I will be in default." The overdue

---

[6] Rummer's counterclaim for reformation fails in light of well-settled Virginia precedent that a contract can only be reformed on the grounds of fraud or mutual mistake. *See Langman v. Alumni Ass'n of U. of Va.*, 247 Va. 491, 503, 442 S.E.2d 669 (1994); *see also Westgate at Williamsburg Condo. Ass'n v. Philip Richardson Co.*, 270 Va. 566, 575, 621 S.E.2d 114 (2005) ("The rule is well-settled that a court is not permitted to rewrite a document or add terms not included by the parties."). Rummer alleges neither, and this record discloses no basis for a finding of fraud or mutual mistake. In any event, as noted, equitable estoppel allows enforcing certain subsequent oral modifications to the Note.

amount was no more than $950, which Rummer did not pay in January 2011 or within the notice-and-cure period in February 2011. Rummer has therefore been in default since February 24, 2011 and owes all amounts due under the Note.

Accordingly, and for good cause,

It is hereby **ORDERED** that summary judgment in favor of plaintiff and against defendant is **GRANTED IN PART**, **DENIED IN PART**, and **DEFERRED IN PART**. The motion is **GRANTED IN PART** in that the undisputed material facts establish that Rummer is in default and must pay the outstanding principal of the Note ($1,000,000), interest and late fees accruing since payment became overdue on January 2, 2011, and reasonable attorney's fees that Hanley has incurred enforcing the Note. It is **DENIED IN PART** in that these undisputed material facts also establish that the parties modified the terms of the Note subsequent to its execution such that interest and late fees would not accrue against Rummer provided he make timely payments of no greater than $950 per month. Finally, it is **DEFERRED IN PART** in that further briefing limited to the following issues is appropriate prior to final judgment:

(1) The deed of trust's effect, if any, on the rights and duties of the parties;

(2) The basis for calculating the amount of interest, late fees, and attorney's fees that are owed under the Note, as well as the exact amount for which final judgment should be entered;

(3) Whether any triable issues of fact preclude entering a final judgment at this time.

It is further **ORDERED** that the parties are **DIRECTED** to file simultaneous briefs before 5:00 PM, Friday, September 23, 2011, that address any or all of these issues, or any other issues that counsel wish to address.

The Clerk is directed to send a copy of this Order to all counsel of record.

Alexandria, Virginia
September 16, 2011

/s/

T. S. Ellis, III
United States District Judge